Argued April 23, affirmed July 8, reconsideration denied
August 20, petition for review allowed September 23, 1975.

BEBOUT, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 83963), *Appellant.*

537 P2d 563

*John R. Faust, Jr.,* Special Assistant Attorney General, Portland, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*David A. Rhoten,* Salem, argued the cause for re-

spondent. With him on the brief were Rhoten, Rhoten & Speerstra and Keith J. Bauer, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

The State Accident Insurance Fund (Fund) appeals from a circuit court order affirming an order of the Workmen's Compensation Board (Board) which found that claimant's claim is compensable. The Fund asserts that the request for a hearing was not timely filed and that the employe in question was not acting within the scope of her employment at the time of the accident in issue.

On February 26, 1970, Sheila M. Bebout died as a result of an auto accident near Salem, Oregon. At the time Mrs. Bebout was an employe of T.C.I., Inc. (TCI), a Portland public relations firm. On November 26, 1971, William Bebout (claimant), as widower of Mrs. Bebout and as the guardian of her minor children by a former marriage, filed a claim for workmen's compensation benefits with the Fund.

On December 22, 1971, W. L. Pomeroy, Administrator of the Compliance Division of the Workmen's Compensation Board, advised counsel for Mr. Bebout in writing that the claim had been referred by the Fund to the Compliance Division for response. Mr. Pomeroy further advised:

"In reviewing contents contained therein, please be advised of the applicable provisions of the Workmen's Compensation Law, specifically ORS 656.319. It appears that the request or filing of the claim is untimely; it would further appear to us that a request for hearing would be subject to a motion to dismiss for being untimely filed."

The letter further noted claimant had a right to request a hearing. It is claimant's assertion that the December 22, 1971, letter from the Workmen's Compensation Board, Compliance Division, was effectively a "denial" of the claim by the Fund and the Board so found. We agree that the letter constituted a denial of the claim on behalf of the Fund.

On December 29, 1971, Mr. Bebout's counsel requested a hearing on the December 22, 1971, determination of the Compliance Division of the Board. After a series of administrative proceedings not pertinent to the issues raised in this appeal, a hearing was held. The referee found, inter alia, that the December 29, 1971, request for a hearing on the claim was not timely filed, whereupon he dismissed the matter. On review, the Board reversed, finding that the request for hearing was timely filed and that Mrs. Bebout was acting within the scope of her employment. It therefore ordered the payment of benefits. The circuit court affirmed the Board action.

We first consider the timeliness of the filing of the request for a hearing.

On the date of Mrs. Bebout's accident, TCI was a noncomplying employer under the Workmen's Compensation Law. The Fund is liable for compensation of any subject workman who suffers work-connected injury while working for a noncomplying employer and the Fund is directed to process such an injury claim just as if the worker were employed by a contributing employer, with one exception not pertinent here. ORS 656.054(1).

Compensation procedures provide for the filing of a written notice of the claim of injury or death with the employer within 30 days after the accident. ORS 656.265(1), (2). However, failure to give the prescribed notice does not bar the claim if the employer had " 'knowledge of the injury or death.' " *Wilson v.*

*State Acc. Ins. Fund,* 3 Or App 573, 575-76, 475 P2d 992 (1970). *See also Logan v. Boise Cascade Corp.,* 5 Or App 636, 485 P2d 441, Sup Ct *review denied* (1971). TCI, the employer, knew of Mrs. Bebout's accident the day it occurred and recognized it as being work-related. Thus we hold the effective date to consider the claim as having been filed to be February 26, 1970, the date of her death.

■ In March or April 1970, claimant by telephone conferred with Charles B. Gill, Jr., Director of the Fund. The conversation is undisputed. Claimant inquired about possible Fund coverage of Sheila M. Bebout's accidental death and was informed that no benefits were payable because Mrs. Bebout was not acting in the scope of her employment at the time of the accident. The Fund thus had actual knowledge of the existence of the claim but it failed to issue a written denial of the claim with information of hearing rights as required by ORS 656.262(6). Under this provision a claimant has 60 days to file a request for a hearing after a denial fulfilling the statutory requirements is mailed. Since such a formal denial was not made until the December 22, 1971, letter of denial from Mr. Pomeroy, claimant's request for a hearing, filed within 60 days of the letter, was timely.①

--------

① The Fund argues that it should not be subject to open-ended liability for the compensation of employes of noncomplying employers where the Fund may not receive notice of a claim even though the claim is "filed" because the employer had notice. It is true that there is less chance that a noncomplying employer as opposed to complying employers will report an accident or claim, as was the situation in this case.

The Fund contends that, in such circumstances, the injured workman (or those claiming on his behalf) should be limited as to the time in which he may enforce his right to compensation by ORS 656.319(1)(a), whereas claimant contends ORS 656.319(2)(a) ought to be applied.

ORS 656.319 provides, in part:

"(1) A hearing on any question relating to a compens-

██ We turn next to the Fund's contention that Mrs. Bebout's death did not arise "out of and in the course of employment." ORS 656.002 (7)(a). The Fund's major argument is that the Supreme Court has held "*as a matter of law* that the facts *in this case* do not constitute a case of an employee acting within

able injury, other than those described in subsection (2) of this section, shall not be granted unless a request for hearing is filed within the times specified in this subsection, and if a request for hearing is not so filed, the claim is not enforceable:

"(a) If no medical services were provided or benefits paid, one year after the date of the accident.

"* * * * *

"(2) Notwithstanding the provisions of subsection (1) of this section:

"(a) With respect to objection by a claimant to denial of a claim for compensation under ORS 656.262, a hearing thereon shall not be granted and the claim shall not be enforceable unless (A) a request for hearing is filed not later than the 60th day after the claimant was notified of the denial * * *.

"* * * * *."

In essence, both the claimant and the Fund appear to agree that the enforceability of the claim depends upon the time limitations for a request for a hearing. If subsection (1)(a) is applied, a claimant who worked for a noncomplying employer would be precluded from seeking benefits after one year whether or not a claim (knowledge of the injury on the part of the employer) had been denied by the Fund.

Claimant's approach, on the other hand, would result in time limits for filing for a hearing of either one year from the date of the claim or 60 days after the date of a denial of compensation. This would be an open-ended proposition. It could lead to situations where the Fund received no word on a claim, of which a noncomplying employer had knowledge, for several years, then a claim was filed with the Fund. If the Fund denied the claim, a hearing could be requested within 60 days and the merits of the claim could still be reached.

Neither approach is totally acceptable. Because the Fund had actual knowledge of the existence of the claim in the present case, we have no difficulty in holding the Fund to an obligation to formally deny the claim. For cases where the Fund has no actual knowledge, we leave the determination to the legislature, or, if necessary, further judicial interpretation.

the course and scope of employment." (Emphasis in original.) The Fund refers to *Heide/Parker v. T.C.I. Incorporated,* 264 Or 535, 506 P2d 486 (1973), which involved civil litigation, by persons injured in Mrs. Bebout's accident, against her employer, relying on the doctrine of respondeat superior. The *Heide/Parker* decision is not dispositive because neither the Fund nor claimant were parties, because the evidence presented in *Heide/Parker* is not necessarily the same as evidence presented in this case, and, more significantly, because *Heide/Parker* was a civil tort action between different parties whereas the present case involves a workman's compensation claim. Workmen's compensation law is a special branch of law which is liberally construed in favor of the workman. *See Waibel v. Compensation Dept.,* 3 Or App 38, 471 P2d 826 (1970), and citations therein. In *Heide/Parker v. T.C.I. Incorporated,* supra, our Supreme Court discussed certain workmen's compensation theories in regard to the scope of employment, but only in the context of the respondeat superior issue, and its ultimate determination was made in the same context. 264 Or at 541-46. If anything, the *Heide/Parker* opinion declined to apply workmen's compensation law in deciding the extent of an employer's responsibility in a civil tort action.

We therefore turn to a review of the facts in this case.

At the time of the accident Mrs. Bebout had been employed as an advertising and public relations representative for TCI for about eight months, servicing accounts in areas including Eugene, Salem, Albany, Portland, Lincoln County, the state of Washington, and Canada. Although she had an office at the Portland offices of TCI, she also worked from her home in Salem where she kept a large number of files.

Her place and hours of work were dictated by the demands of the job.

TCI made the down payment and instalment payments for Mrs. Bebout's automobile and paid her auto expenses for any business-related trips. Mrs. Bebout carried her press materials with her in the auto as she serviced her accounts.

TCI not only expected Mrs. Bebout to travel to Salem and other cities to service her clients, but it would have her carry materials to Salem clients in lieu of using other means; if Mrs. Bebout had any "contact" in the Salem area, TCI was "lenient" in paying her mileage to and from Salem even if she did not return to Portland the same day.

■ On the day of her accident, Mrs. Bebout was traveling from Portland to Salem and had in her car at least two press items marked for delivery in Salem. Thus, even if her trip to Salem could be characterized as a return home, at the time of her fatal accident Mrs. Bebout was returning with an automobile which was necessary to her work. She also was engaged in a dual-purpose trip in which one purpose was the delivery of materials in Salem on behalf of TCI. Under either approach her accident occurred within the scope of her employment. *See Casper v. SAIF,* 13 Or App 464, 511 P2d 451 (1973); *Boyd v. Francis Ford, Inc.,* 12 Or App 26, 504 P2d 1387 (1973); *Rosencrantz v. Insurance Service,* 2 Or App 225, 467 P2d 664 (1970). *See also Gumbrecht v. SAIF,* 21 Or App 389, 534 P2d 1189 (1975).

Affirmed.